# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# BALTIMORE DIVISION

| | |
|---|---|
| U.S. Equal Employment Opportunity Commission,<br>  George H. Fallon Federal Building<br>  31 Hopkins Plaza, Suite 1432<br>  Baltimore, MD 21201<br><br>             Plaintiff,<br><br>       v.<br><br>LAZ Parking Mid-Atlantic, LLC,<br>  110 W. Lombard Street<br>  Baltimore, MD 21201<br><br>             Defendant. | Civil Action No.<br><br><br><br><br><u>COMPLAINT</u><br><br><br><br>**JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices and to provide appropriate relief to Fouad Sika ("Sika"), Birhan Mezgebe ("Mezgebe"), and Houssin El Kharroubi ("El Kharroubi"), who were adversely affected by such practices. As alleged with greater particularity below, the United States Equal Employment Opportunity Commission ("the EEOC" or "the Commission") alleges that LAZ Parking Mid-Atlantic ("Defendant" or "LAZ") unlawfully discriminated against Sika, Mezgebe, and El Kharroubi by terminating them on the basis of their national origin.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(l) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(l) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Maryland.

## PARTIES

3. Plaintiff, the United States Equal Employment Opportunity Commission, is the Agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(l) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(l) and (3).

4. At all relevant times, Defendant has continuously been a Connecticut corporation with at least fifteen (15) employees doing business within Maryland.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b),(g) and (h) of Title VII, 42 U.S.C. § 2000e(b)(g), and (h).

6. More than 30 days prior to the institution of this lawsuit, Sika filed a charge with the Commission alleging violations of Title VII by Defendant.

7. On July 25, 2018, the Commission issued Defendant a Letter of Determination finding reasonable cause to believe that Defendant violated Title VII and inviting Defendant to

join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

8. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

9. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. On September 10, 2018, the Commission issued a Notice of Failure of Conciliation to Defendant.

11. All conditions precedent to the initiation of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Arising from a 2015 decision to lay off foreign-born employees at the DownUnder Garage location at 110 W. Lombard Street in Baltimore, Defendant has engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1) by discharging Sika, Mezgebe, and El Kharroubi on the basis of their national origin. Sika and El Kharroubi are of Moroccan origin. Mezgebe is of Ethiopian origin.

    a. Sika, Mezgebe, and El Kharroubi began working for Defendant in 2009 at the DownUnder Garage. Mezgebe and El Kharroubi worked as cashiers. Sika worked as a customer service representative, with more responsibilities than the cashiers. Sika worked in the office, answered the phone, assisted customers, and monitored the parking garage.

3

    b.    At the time of their termination, Sika, Mezgebe and El Kharroubi reported to Operations Manager Gunnar Gerken ("Gerken") and Supervisors Robin Massenburg ("Massenburg") and Tyrese Malloy ("Malloy"). Malloy had previously served as a customer service representative before being promoted, leaving Sika as the only customer service representative working at the DownUnder garage location.

    c.    In 2015, the owner of the DownUnder Garage decided to convert the garage operations from a cashiering at exit system to one where customers pay directly at a machine, resulting in the elimination of four full-time shifts or 160 hours of weekly labor.

    d.    As the conversion neared completion, Gerken informed Sika that although he would not be laid off, the reduction-in-force would affect his schedule. Gerken specifically informed Sika that his hours would change to Monday (4 pm to 10 pm); Thursday (10 pm – 8 am) and Friday and Saturday (8 pm to 8 am). When Sika accepted the new shift schedule, Gerken expressed surprise, saying, "Really?"

    e.    Five minutes later, Gerken called Sika back and inquired whether he really wanted to continue working given that the shift was only 36 hours part-time and he would not have paid time off because it was not a full-time position. Sika disagreed that it was a part-time position, since he knew that part-time was less than 32 hours a week. Nevertheless, Sika confirmed that he still wanted to continue working for Defendant.

    f.    Two weeks later, on May 22, 2016, Gerken informed Sika that there was no job for him after all, and that if he wanted to collect unemployment he would need to

4

stay until his last day. When Sika expressed shock at being laid off, Gerken told him that he could focus on his studies while receiving unemployment.

    g.    Sometime prior to terminating Sika, Gerken had commented to Sika about his "broken English" and made fun of his accent.

    h.    Around the same time, Gerken offered El Kharroubi an alternative part-time schedule that would have been flexible and on-demand rather than set in advance. Unlike Sika, El Kharroubi refused the downgraded schedule immediately, but the result was the same: El Kharroubi was also terminated.

    i.    Gerken informed cashier Mezgebe that her employment was being terminated because of the conversion to a machine system. When Mezgebe asked why he was terminating only certain employees, Gerken told her it was because of their "broken English." During this conversation, Gerken stated that while Mezgebe was a good and honest employee, her "broken English" was a sticking point. Nonetheless, Gerken offered to serve (and did in fact serve) as a positive reference for Mezgebe's future job applications.

    j.    Defendant retained cashiers Raven Brooks ("Brooks") and Joanna Booker ("Booker"), both African-Americans, as customer service representatives. Brooks had only worked as a cashier for Defendant for nine months. Booker had never worked as a customer service representative.

13. The effect of the practices complained of above in paragraph 12 has been to deprive Sika, Mezgebe, and El Kharroubi of equal employment opportunities and otherwise adversely affect their status as employees because of their national origin.

14. The unlawful employment practices complained of above were intentional.

15. The unlawful employment practices complained of above were done with malice or with reckless indifference to Sika's, Mezgebe's, and El Kharroubi's federally protected rights.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in discrimination on the basis of national origin;

B. Order Defendant to institute and carry out policies, practices, and programs which prevent discrimination on the basis of national origin;

C. Order Defendant to implement non-discriminatory objectives, written policies and practices regarding the terms and conditions of employment, and sign and conspicuously post, for a designated period of time, a notice to all employees that sets forth the remedial action required by the Court and informs all employees that Defendant will not tolerate discrimination on the basis of national origin;

D. Order Defendant to make Sika and Mezgebe whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement, front pay in lieu of reinstatement, or positive references;

E.  Order Defendant to make Sika, Mezgebe, and El Kharroubi whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 12 above;

F.  Order Defendant to make Sika, Mezgebe, and El Kharroubi whole by providing compensation for past and future non-pecuniary losses including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, embarrassment, frustration, and humiliation, in an amount to be proven at trial;

G.  Order Defendant to pay Sika, Mezgebe, and El Kharroubi punitive damages for its callous indifference to their federally protected right to be free from discrimination;

H.  Grant such further relief as the Court deems necessary and proper in the public interest; and

I.  Award the Commission its costs in this action.

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

_____
DEBRA M. LAWRENCE
Regional Attorney

_/s/ Maria Salacuse_

MARIA SALACUSE
Supervisory Trial Attorney
Federal Bar No. 15562

_/s/ Jess Unger_

JESS UNGER
Trial Attorney

UNITED STATES EQUAL
EMPLOYMENT OPPORTUNITY
COMMISSION

Baltimore Field Office

George H. Fallon Federal Building
31 Hopkins Plaza, Suite 1432
Baltimore, MD 21201-2525
phone: 410-209-2763 | fax: 410-962-4270
jess.unger@eeoc.gov